# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
)
RODNEI DE ASSIS DA SILVA, GABRIEL MENDES,    )
VALDINELIO CAMILO SANTANA, and EDWARD    )
FIALHO, on behalf of themselves and all others    )
similarly situated,    )
)
                Plaintiffs,    )    No. 1:23-cv-10743
)
        v.    )    Collective Action
)
VOLTECH ELECTRIC, INC.,    )
and MARCELO ARAUJO,    )
)
)
          Defendants    )
_____)

## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## I.    INTRODUCTION

Plaintiffs Rodnei de Assis da Silva, Gabriel Mendes, Valdinelio Camilo Santana[1], and Edward Fialho ("Plaintiffs"), individually and on behalf of the individuals that have opted in to this case (collectively, the "Settlement Collective"), hereby submit their unopposed motion for approval of their FLSA Settlement Agreement with Defendant Voltech Electric Inc. ("Voltech"), and Marcelo Araujo.[2] This settlement resolves the claims of 18 individuals  (the four named Plaintiffs and the 14 opt-in individuals, collectively the "Settlement Collective") under the Fair Labor Standards Act, 29 U.S.C. §§ 201, _et seq_. ("FLSA") and related state law claims for a total of $500,000. As detailed below, this proposed resolution of the Settlement Collective's FLSA

---

[1]    The correct spelling of this Plaintiff's last name is "Santana", not "Santama".
[2]    The Settlement Agreement is attached hereto as Exhibit A.

claims is fair and reasonable and warrants judicial approval. Defendants Voltech and Marcelo Araujo do not oppose this Motion.

Because the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute, Plaintiff respectfully requests that Court enter an order:

1. Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only:

   Plaintiff and the Opt-In Plaintiffs (*i.e.*, the individuals who as of September 28, 2023 have filed an Opt-In Consent Form with the Court in *Da Silva v. Voltech Electric Inc.*, No. 1:23-cv-10743 (D. Mass.), and who are identified in the Settlement Agreement) (the "Settlement Collective").

3. Approving the Gross Settlement Amount of $500,000.00 in resolution of this action, distributed by Defendants in two payments as indicated in the proposed Settlement Agreement.

4. Approving the proposed service award in the amount of no more than $3,000 from the Gross Settlement Amount to Plaintiffs Rodnei Assis Silva, Edward Fialho, Valdinelio Camilo Santana and Gabriel Mendes for their service to the Settlement Collective.

5. Approving Plaintiff's unopposed request for attorneys' fees, in the amount not to exceed 30% of the Gross Settlement Amount.

6. Dismissing this action with prejudice upon Court approval of the settlement.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit in the United States District Court for the District of Massachusetts on April 6, 2023 alleging that Voltech misclassified its employees as exempt from overtime compensation and denied them overtime compensation when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C.§ 201, *et seq.* (Count I) and in violation of the Massachusetts Fair Minimum Wage Act, G.L. c. 151 § 1A (Count II). (ECF No. 1). Plaintiffs allege that although they routinely worked in excess of forty (40) hours

2

a week, they were not paid overtime compensation for hours worked in excess of forty (40) hours per week, as required by the FLSA. Plaintiffs further allege that Voltech failed to pay them applicable prevailing wage rates for work performed on public works projects, in violation of Mass. Gen. L. c 149 § 27. *Id.* Plaintiffs also allege that Voltech deducted from Plaintiffs' wages the costs of tools used to perform their work duties, in violation of Mass. Gen. L. c149 § 148. *Id.*

Defendant denies the allegations, and is agreeing to settle this case solely to avoid the additional time and expense of protracted litigation.

Following the filing of Plaintiff's Complaint, the Parties engaged in informal discovery focused on settlement negotiations. During this phase of discovery, Defendant produced pay records and informally discussed various aspects of the legal and factual issues presented by Plaintiffs' Complaint.  The Parties consented to Defendants' request for an extension to respond to the Complaint. On July 11, 2023, Plaintiffs filed a motion to conditionally certify a class. The Parties then agreed to mediate the case for all of the workers who had opted into the case in order to arrive at a settlement. On July 19, 2023, the Parties filed a joint motion to stay litigation pending mediation (Dkt. 23), which the Court granted on July 20, 2023 (Dkt. 24). Throughout this period, additional individuals opted-in to this case (Dkt. 4, 7, 25, 26, 27), which, in addition to the named plaintiffs in the above-captioned case total 18 individuals, together comprising the proposed Settlement Collective.

After agreeing to mediate, Voltech provided payroll data and time keeping records to Plaintiff's Counsel (as defined below) to allow them to calculate potential damages for the asserted claims. Plaintiff's Counsel conducted a detailed damages analysis based on the timekeeping and pay records produced by Defendant. On August 29, 2023, the Parties engaged in private mediation with experienced labor mediator and retired Superior Court Judge Christopher J. Muse. Lichten

Decl. ¶ 11. After arms' length settlement negotiations, the Parties reached an agreement memorialized in a settlement agreement, the essential terms of which are set forth below. Each of the Plaintiff and Settlement Collective Members have reviewed and executed the Settlement Agreement.[3]

## II.    **TERMS OF THE SETTLEMENT AGREEMENT**

The Settlement Agreement provides for a Gross Settlement amount of $500,000.00. Settlement Agreement ¶ 5. The Gross Settlement Amount includes sums to cover a service award for the named plaintiffs not to exceed $3,000.00; and attorneys' fees and all costs  not to exceed 30% of the gross settlement amount, or $150,000; *Id*. The Gross Settlement Amount resolves the claims of the Plaintiffs and the other members of the Settlement Collective, consisting of individuals who opted into this case – a total of 18 people.  *Id* at ¶3.

After receiving approval of this Settlement Agreement by the Court, Defendant shall make payments of the Gross Settlement Amount in two installments.  The first installment constituting $200,000 will be paid no later than December 31, 2023. A second payment in the amount of $300,000 will be paid no later than April 1, 2024. *Id* at ¶10.

The Gross Settlement Amount will be distributed as Settlement Awards to Settlement Collective Members based on the hours worked by each Settlement Collective Member and their relative wages during the Relevant Time Period (January 2020-April 6, 2023), which Plaintiffs` counsel have taken from Defendant's payroll records.  A breakdown of approximate individual Settlement Awards is attached as Exhibit A to the Settlement Agreement.

---

[3]    Attached Exhibit A (the Settlement Agreement) includes the signature pages collected to date.

The Settlement Agreement also includes a provision that Defendants shall also provide Settlement Collective Members a statement of the hours they performed electrical service work for Voltech. The Parties also agree to refrain from divulging negative information about each other. Finally, Defendants agree to respond with neutral non-disparaging information to any reference requests received regarding the Settlement Collective Members.

In exchange for the consideration set forth in this Settlement Agreement, the Settlement Collective Members agree to release Defendants, and all of their direct and indirect parent corporation(s), subsidiaries, divisions, affiliates, insurers, reinsurers, business units, professional employment organizations, representatives, officers, directors, managers, shareholders, successors and assigns, from any and all local, state, and federal wage and hour-related claims, including without limitation the Massachusetts Wage Laws, G.L. c. 149 § 148, 150 and c. 151 § 1A *et seq.*, that may have accrued during each Settlement Collective Members' work with Voltech through April 6, 2023, including claims for unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs, and claims derived from the alleged failure to pay overtime or other due wages during that period that were or could have been brought in the Action. *Id.* ¶ 3.

III.    **ARGUMENT**

As discussed below, because the Settlement Agreement reached by the Parties represents a fair and reasonable resolution of a *bona fide* dispute, the Court should enter the accompanying proposed order approving the Settlement of the Settlement Collective Members' FLSA claims and approving a service award to Plaintiffs Rodnei de Assis da Silva, Gabriel Mendes, Valdinelio Camilo Santana , and Edward Fialho in the amount of no more than $3,000.00 and approving the award of attorneys' fees and costs  not to exceed 30% of the Gross Settlement Amount ($150,000).

A.    **Standard for Settlement Approval under the FLSA.**

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S., U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

**B.    The Settlement is Fair and Reasonable Resolution of a *Bona Fide* Dispute Under the FLSA**

"The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355).[4] The Settlement Agreement in this case satisfies these criteria. In this case, a *bona fide* dispute exists regarding Plaintiffs' FLSA

---

[4]    This standard is far less demanding than Federal Rules of Civil Procedure Rule 23, where unnamed class members could have their claims released. Here, the parties to the Settlement Agreement agree to the settlement and no class members will have claims released claims that they did not agree to.

claims. Plaintiffs have alleged, among other claims articulated above, that they and the other Settlement Collective Members were misclassified by Voltech as exempt, and, as a result, were not paid the overtime premium for hours worked in excess of 40 hours per week. *See* Compl., Dkt. 1. Defendants deny these allegations, and maintain that the Settlement Collective Members were properly compensated. This is sufficient to establish the existence of a *bona fide* dispute. *See, e.g., Singleton*, 146 F. Supp. 3d at 261 ("the Court agrees that the parties' proposed settlement represents a fair and reasonable resolution of this dispute, and that the settlement was reached through arms-length negotiations . . . and it finds that the early settlement of this dispute will avoid potentially lengthy and expensive litigation over what appears to be a modest amount of alleged damages."). In addition, had this case gone forward, Defendant would have likely disputed the propriety of final collective certification in this case, the proper calculation of the hours worked by the Settlement Collective Members due to time they spent traveling, and would have further argued that they acted in good faith with regard to the classification Settlement Collective Members, and therefore that liquidated damages are not warranted. *See* Lichten Decl. ¶ 15. Thus, the Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of the Settlement Collective Members' claims.

The Settlement also provides a significant recovery for Settlement Collective Members in this case. Settlement Agreement ¶ 5; Lichten Decl. ¶ 19. The Parties dispute the total amount of compensable hours that Plaintiffs worked, and further dispute whether Defendants failed to pay any prevailing wages. The Gross Settlement Amount, however, represents more than 100% of Plaintiffs' alleged overtime unliquidated damages were they to prevail on their factual allegations regarding compensable overtime hours, based on a detailed analysis of the possible overtime damages for each of the Settlement Collective Members were they eventually successful at trial.

The Gross Settlement Amount thus represents a fair compromise between the Parties' competing positions.[5] The average Settlement Award is $ 19,444.44, and the maximum award is $ 43,484.72. Settlement Agreement, Ex. A; Lichten Decl. ¶ 20. These are substantial amounts of compensation, and settlement is an excellent result for the Settlement Collective Members in light of the likelihood that, should litigation go forward, the Collective Action members may recover nothing at all, or may face a significantly reduced recovery. *Id.* at ¶ 15. Moreover, 4 of the Settlement Collective Members were present at the mediation leading to the Settlement Agreement and each of the Settlement Collective Members have reviewed, approved and executed the Settlement Agreement, which includes the amount that they will be due to receive if the settlement receives Court approval. *Id.* at ¶26.

The formula for allocating settlement awards to the Settlement Collective Members is also fair and reasonable. The Settlement Agreement provides for a distribution formula where each Settlement Collective Member shall be paid a pro rata portion of the Gross Settlement Amount, which will be allocated among Settlement Collective Members based on their wages and the number of hours and weeks that they worked for Defendant during the Relevant Time Period as a fraction of the overtime hours worked by all Settlement Collective Members. Settlement Agreement ¶ 2; Lichten Decl. ¶ 19. Thus, those individuals who worked more workweeks and/or received higher wages will receive more under the Settlement Agreement. *Id*. All Settlement Collective Members will receive awards above $1,000. *Id.*

The scope of the release in the Settlement Agreement is also fair and reasonable. Settlement Collective Members agree to release Defendants, and all of their direct and indirect parent

---

[5]    Although a prevailing wage claim was pled, plaintiffs have been unable to substantiate that claim.

corporation(s), subsidiaries, divisions, affiliates, insurers, reinsurers, business units, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities, from any and all local, state, and federal wage and hour-related claims, including without limitation the Massachusetts Wage Laws, G.L. c. 149 § 148, 150 and c. 151 § 1A *et seq.*, that accrued during each Collective Members' work with Defendants through April 6, 2023, including claims for unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs, and claims derived from the alleged failure to pay overtime or other due wages during that period that were or could have been brought in the Action. Settlement Agreement ¶ 3; Lichten Decl. ¶ 21. No non-wage claims are being released.

### C.    The Proposed Service Payment to the Named Plaintiffs are Fair and Reasonable

The settlement also provides for a service payment not to exceed $3,000 to Plaintiffs Rodnei de Assis da Silva, Gabriel Mendes, Valdinelio Camilo Santana , and Edward Fialho, which is fair and reasonable. Settlement Agreement ¶ 5. These Plaintiffs took on the risk of stepping forward and bringing this case against Defendants on behalf of other Settlement Collective Members. Lichten Decl. ¶ 23-27. These Plaintiffs provided their contracts and other documents relevant to their work with Defendants, and helped Plaintiffs' Counsel develop their theories of liability and damages models. They also provided significant assistance to Plaintiffs' Counsel as they drafted the Complaint, reviewed Defendants' discovery production, prepared a motion for conditional certification, and prepared a settlement demand. *Id.*. In addition, they spent a significant amount of time preparing and attending mediation.  The incentive award of no more than $3,000 fairly recognizes the services that they performed in advancing the Settlement

Collective Members' interests and the time that they dedicated to this lawsuit. *Id.*

Courts in this Circuit have routinely recognized the importance of such awards in wage and hour cases of this nature. *See Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (quoting *Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11–cv–00738–RNC, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014)) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). The court in *Lauture* recognized the significant "benefits of plaintiffs bringing wage and hour collective and class litigation because, without them, other employees may not assert their rights due to fears 'of retaliation or of being 'blackballed' in [their] industry,'" and approved a $15,000.00 incentive award to each class representative. *Lauture*, 2017 WL 6460244, at *2 (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)). The service award requested in this case properly compensates these Plaintiffs for the risks they took on in coming forward to bring this case, particularly in view of the fact that they continue to work in the electrical services industry.

### D.    The Attorney's Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiff's Counsel for the Time and Expense of Litigating This Matter.

The Settlement Agreement further provides for the payment of Plaintiffs' attorneys' fees and costs in the amount not to exceed 30% or $150,000  Agreement ¶ 5. Plaintiff's Counsel have collectively spent 420 hours advocating on behalf of Plaintiffs and the Settlement Collective, for a combined lodestar of $175,629. Lichten Decl. ¶30. The requested award of not more than 30% (which, after costs comprise approximately 28%) of the Gross Settlement Amount  is therefore reasonable and should be approved.

Counsel's contingency fee agreement provides for recovery of fees equal to one-third of the gross recovery, so Plaintiffs' Counsel's request is in line with their fee agreement. In fact, as indicated in Exhibit A to the Settlement Agreement, Plaintiffs' Counsel will distribute $350,000 to the Settlement Collective Members, retaining only 30% of the total Gross Settlement Amount. Fee requests similar to the one made by Plaintiff here have routinely been approved by courts, particularly in employment cases. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving attorneys' fees of one-third); *Scovil v. FedEx Ground Package Sys., Inc.*, 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) ("contingent fees of one-third are common" and "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts"). Notably, the amount Plaintiff's Counsel will receive is significantly less than their fees when calculated under a lodestar method. Given Plaintiff's Counsel's substantial experience in wage and hour litigation,[6] and the result achieved for the Settlement Collective Members, this fee request is reasonable.

## IV.    <u>CONCLUSION</u>

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

1. Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only:

> Plaintiffs and the Opt-In Plaintiffs (*i.e.*, individuals who as of March 17, 2022 have filed an Opt-In Consent Form with the Court in *Pearl v.*

---

[6]    Lichten & Liss-Riordan, the lead counsel firm for Plaintiff, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully argued cases arising under state and federal wage laws before the before the Supreme Courts of Maine, Massachusetts, Hawaii, and New Jersey, and in the United States Court of Appeals for the First, Third, Seventh, Sixth, Eleventh and Ninth Circuits. *See generally* Lichten Decl. ¶3.

*Clearlink, LLC*, No. 1:20-cv-10529 (D. Mass.)) (the "Settlement Collective").

3.  Approving the Gross Settlement Amount of $500,000.00 in resolution of this action.

4.  Approving the proposed service award in the amount of not more than $3,000.00, from the Gross Settlement Amount to Plaintiffs Rodnei de Assis da Silva, Gabriel Mendes, Valdinelio Camilo Santana, and Edward Fialho for their service to the Settlement Collective.

5.  Approving Plaintiffs' unopposed request for attorneys' fees, in the amount of not more than $166,667, which is to be paid from the Gross Settlement Amount.

6.  Dismissing this action with prejudice upon Court approval of the settlement.

7.  Reserving exclusive and continuing jurisdiction over this action, the named Plaintiffs, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

Dated:  September 28, 2023                    Respectfully submitted,

                                             By their attorneys,


                                             /s/Harold Lichten
                                             Harold L. Lichten, BBO #549689
                                             Matthew Thomson, BBO #682745
                                             LICHTEN & LISS-RIORDAN, P.C
                                             729 Boylston Street, Suite 2000
                                             Boston, MA 02116
                                             (617) 994-5800
                                             hlichten@llrlaw.com
                                             mthomson@llrlaw.com

---

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, a copy of this document was served by electronic filing on all counsel of record.

                                             /s/ Harold Lichten
                                             Harold Lichten

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| RODNEI DE ASSIS DA SILVA, GABRIEL MENDES, VALDINELIO CAMILO SANTANA, and EDWARD FIALHO, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) No. 1:23-cv-10743 |
| v. | ) ) |
| VOLTECH ELECTRIC, INC., and MARCELO ARAUJO, | ) ) ) |
| Defendants | ) ) ) |

_____ )

**SETTLEMENT AGREEMENT**

All Parties to this action hereby agree as follows:

1. Upon execution of this Agreement by the Parties and payment of the funds set forth herein, the action will be dismissed with prejudice and without cost to either party.

2. The 18 former Voltech Electric, Inc. ("Voltech") workers ("Plaintiffs") whose names are attached as Exhibit A to this agreement shall be paid a pro rata settlement in an amount as also described in Exhibit A.

3. In return for these payments, Plaintiffs shall execute Releases, attached as Exhibit B, releasing the Defendants, their officers, and agents from any and all claims relating to unpaid wages or expenses arising out of their work for the Defendant Voltech and its agents or officers.

4. This Agreement is subject to approval by the court and in the event the court does not for any reason approve the settlement, the Agreement may be voided by any party and its contents may not be used for any purposes.

5. The total amount of the settlement, which shall be distributed to Plaintiffs according to Exhibit A in amounts determined by Plaintiffs' counsel, shall be $500,000 (the "Settlement Amount"). Of the Settlement Amount, the Defendants shall not object to Plaintiffs' counsel seeking attorney's fees from the Settlement Amount, not to exceed 30% of the fund, and for incentive payments for the named plaintiffs not to exceed $3,000.

6. The remaining Settlement Amount, after the assessment and deduction of Plaintiffs' counsel's attorney's fees and incentive payments, shall be allocated as follows:

   a. 30.86% as 1099 expenses for the base amount of Plaintiffs' claims;

   b. 61.73% as statutory liquidated treble damages for the alleged lost overtime compensation pursuant to M.G.L. ch. 151 § 1B; and

   c. 7.41% as statutory prejudgment interest.

7. The parties agree that neither the Defendants, its officers and executives, nor Plaintiffs shall disparage or otherwise divulge negative information about the other unless required to do so by a lawful subpoena or court proceeding. Should the defendants receive  any reference inquiries for the plaintiffs, they will respond with providing neutral non-disparaging information.

8. As part of this agreement, Voltech shall provide to the Plaintiffs a statement of the hours such individuals performed electrical service for Voltech during the period during which

Plaintiffs performed such services.  Voltech shall provide such statements by November 1, 2023.

9.  This settlement shall not be considered as or constitute any admission of any liability by Voltech or any of its officers or agents and cannot be used as evidence of any admission of liability and the Defendants hereby specifically deny any and all liability and unlawful activity.

10. The Settlement Amount shall be paid in two installments. The first installment constituting $200,000 to be paid no later than December 31 2023 and the remaining payment of $300,000 to be paid no later than April 1 2024.

11. Failure of Voltech to make the respective payments by the dates provided above in ¶ 10 shall cause said payment to accrue statutory interest at a rate of 12% per annum.

12. No payment shall be issued to an individual unless or until that individual has signed a release of claims, which Release is attached as Exhibit B.

13. The Parties shall, within 5 days of the execution of this agreement, file a joint motion for approval of the settlement and stay all proceedings pending dismissal upon receipt of the full Settlement Amount as set forth herein.

14. The Parties stipulate that their Counsel shall not engage in motion practice or discovery, provided that Voltech makes payment timely in accordance with ¶ 5.

*Signature Page to Follow*

Execute as an instrument under seal:

On behalf of the individuals listed in
Exhibit A:

On behalf of himself and Voltech
Electric, Inc.:

_____

_____

Harold Lichten, BBO #549689
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Ste. 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com

Marcelo Araújo
President
*Duly Authorized*

# EXHIBIT A

**Exhibit A**

The below listed individuals are the named plaintiffs and/or others alleged to be similarly situated to the named plaintiffs in civil action *Rodnei De Assis da Silva et al v. Voltech Electric, Inc. et al.*, No. 1:23-cv-10743. The below listed individuals shall be bound by the Settlement Agreement and, as provided herein, receive a portion of the Settlement Amount paid by Voltech Electric, Inc. in accordance with the Settlement Agreement in exchange for, and only after, their execution of the Release attached to the Settlement Agreement as Exhibit B.


1.  Carlos Alberto Ferreira de Oliveira      $_____

2.  Emerson de Oliveira      $_____

3.  Edward Fialho      $_____

4.  Fabio Bento de Queiroz      $_____

5.  Gabriel Domingos Da Silva      $_____

6.  Gabriel V Mendes      $_____

7.  Gabriel Givisiez Farias      $_____

8.  Josiel Calros da Silva      $_____

9.  Leandro Pereira Silva      $_____

10. Lucas Cristeli Vicente      $_____

11. Marcilio Alves dos Santos      $_____

12. Valdinelio Camilo Santana      $_____

13. Rodne de Assis da Silva      $_____

14. Talles Marquez      $_____

15. Paulo de Tarso Magalhaes Filho      $_____

16. Rafael Givisiez Farias      $_____

17. Rodolfo Duarte      $_____

18. Guilherme Viana      $_____

# EXHIBIT B

**Exhibit B**
**SETTLEMENT AND RELEASE**

_____          $ _____
             Name                                      Payment Amount
         ("Plaintiff")

In exchange for the payment amount listed above (the "Payment"),   by Marcelo Araujo and Voltech Electric, Inc., 42 Morton Street, Framingham, MA 01702 ("Voltech" and collectively with Plaintiff, the "Parties") pursuant to ¶ 5 of the Settlement Agreement executed in connection with civil action *da Silva et al v. Voltech Electric, Inc. et al.*, No. 1:23-cv-10743 determined by Lichten & Liss-Riordan P.C. to be commensurate with Plaintiff's individual claims against Voltech, Plaintiff agrees to the following terms and conditions:

1. **Release:**  Plaintiff agrees to release and forever discharge Voltech, and its officers, directors, agents, employees, affiliates, subcontractors, suppliers, sureties, insurers, attorneys, privities and principals, of or from any and all manner and manners of action, causes of action, suits, liens, debts, demands, controversies, agreements, promises, omissions, damages, judgments, executions, claims, obligations and defenses, whatsoever asserted or unasserted, at law or in equity, including but not limited to for personal, property or economic damages, which against Voltech that Plaintiff ever had or now has, from the beginning of the world to this date, whether or not presently suspected, contemplated or anticipated, except for the rights and obligations set forth in this Release, which arise from or in any way relate to the claims asserted in this case, including  any claims for wages, benefits, or other forms of employment compensation.

2. **No Publicity:**  It is expressly understood and agreed that, following the full execution of this Release, Plaintiff nor their respective attorneys or representatives will publicize the terms or nature of this Release, except that disclosure is permitted: (1) as necessary with regard to any proceeding for the enforcement of this Release; (2) as may be required by any court or agency of competent jurisdiction; or (3) as may otherwise be required by law.

3. **Non-Disparagement:**  The Parties covenant and agree that upon execution of this Release that neither of them, nor any of their respective attorneys, agents, subsidiaries, affiliates, successors, assigns, officers, key employees or directors, will in any way publicly disparage, call into disrepute, defame, slander or otherwise criticize the other Party or such other Party's subsidiaries, affiliates, successors, assigns, officers, directors, employees, shareholders, agents, attorneys or representatives.

4. **Severability, Waiver and Modification**: The invalidity or unenforceability of any provision of this Release shall not affect or render invalid or unenforceable the remaining terms and provisions of this Release.  The Parties intend that this Release may be enforced to the maximum extent permitted under Massachusetts law. The delay or failure of a Party to exercise any right, power, or privilege hereunder or failure to strictly enforce any breach or default shall not constitute a waiver with respect thereto and no waiver of any such right, power, privilege, breach, or default on any one occasion shall constitute a waiver thereof on any subsequent occasion unless clear and express notice thereof is provided in writing.  This Release may not be changed, modified, supplemented or terminated, except by written agreement of the Parties.

5. **Representations and Warranties**: The Parties agree that each has had opportunity to obtain the advice of legal counsel prior to the execution of this Release, that each has read this Release carefully, that each signed this Release of his, her or its own free will, and that each has in no way relied upon or been induced by any representation, statement or act by any other party or their representatives, except as contained in or specifically referred to herein.  Each party warrants that it has not assigned or transferred or purported to assign or transfer any of the demands, claims, or causes of action released or dismissed by this Release.  The Parties further agree that no ambiguity contained herein shall be construed against any party solely because said party drafted this Release, in whole or in part.  The Parties agree that this Release is not an admission of liability, fault or wrongdoing.

Plaintiff's Initials: _____

**SETTLEMENT AND MUTUAL RELEASE (CONTINUED)**

6. **<u>Entire Agreement</u>**:  The Parties declare and represent that:  (i) no promises, inducements, or agreements not herein expressed have been made to the Parties with respect to the subject matter of this Release; (ii) this Release constitutes the sole, only, entire, and complete agreement of the Parties hereto relating in any way to the settlement and dismissal of the above-referenced litigation; (iii) the terms of this Release are contractual and not a mere recital; (iv) there are no oral  agreements relating to this Release; and (v) all prior discussions and negotiations relating to this Release have been, and are, merged, integrated, into, and superseded by this Release.  This Release may not be amended or modified except in writing executed by all parties.  This Release shall be binding upon and inure to the benefit of the Parties and their respective heirs, privities, successors and assigns.


_____
Print Name

_____
Signature

_____
(# Street, Apt.)

_____
(State, City & Zip)

Date: ____/_____/2023

2