UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RODNEI DE ASSIS DA SILVA, GABRIEL MENDES, VALDINELIO CAMILO SANTANA, and EDWARD FIALHO, on behalf of themselves and all others similarly situated,<br>         Plaintiffs,<br><br>           v.<br><br>VOLTECH ELECTRIC, INC. and MARCELO ARAUJO,<br>         Defendants. | No. 23-cv-10743-DLC |

**MEMORANDUM AND ORDER ON MOTION TO APPROVE SETTLEMENT**

CABELL, Ch. U.S.M.J.

Named plaintiffs Rodnei de Assis da Silva, Gabriel Mendes, Valdinelio Camilo Santana, and Edward Fialho ("named plaintiffs"), all former employees of defendant Voltech Electric, Inc. ("Voltech"), allege that the company and its owner, defendant Marcelo Araujo ("Araujo"), denied them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) ("section 216(b)").  Together, they brought the FSLA claim on behalf of themselves and all other Voltech "employees who worked more than forty hours per week in any week during the past three years who may choose to 'opt-in' to this case."  (D. 1, ¶ 36).  The named plaintiffs further contend that Voltech failed to pay them the prevailing wage rate for work performed on public works projects

in violation of M.G.L ch. 149, § 27, deducted "the costs of tools used to perform their work duties" from their wages in violation of M.G.L. ch. 149, § 148, and failed to pay them overtime in violation of the Massachusetts Fair Minimum Wage Act ("MFMWA"), M.G.L. c. 151, § 1A.[1]

Pending before the court is an unopposed motion to approve a $500,000 settlement among Voltech, Araujo, the named plaintiffs, and 14 opted-in individuals, all of whom would be parties to the settlement. (D. 28). Finding the settlement (D. 28, pp. 14-17, 19) fair and reasonable, the motion (D. 28) is allowed.

I. **BACKGROUND**

Voltech, with a principal place of business in Framingham, Massachusetts, provides electrical contracting services in Massachusetts as well as other locations in the United States. (D. 1, ¶ 7) (D. 17, ¶ 7). The company employs electricians to perform electrical work, and it employed the named plaintiffs to perform such work. (D. 1, ¶¶ 7, 13). The company's electricians allegedly travel in company vehicles wearing company uniforms to worksites to perform a variety of electrical work without compensation. (D. 1, ¶¶ 13, 15, 17-18, 34). Araujo, as the company's president, participated in the company's management (D.

---

[1] The named plaintiffs also bring the MFWA claim as an opt-out class action on behalf of other similarly situated individuals. (D. 1, ¶ 6). The proposed settlement dismisses this action with prejudice, including the MFMWA claim.

1, ¶ 12) (D. 17, ¶ 12), directly interacted with the named plaintiffs, and supervised various contracts. (D. 1, ¶ 12).

Shortly after the named plaintiffs filed suit, they submitted signed settlement consent forms for themselves and seven opted-in plaintiffs. (D. 4-1) (D. 7-1) (D. 28, p. 19). Thereafter, seven additional former Voltech employees similarly opted-in to become plaintiffs and parties to the settlement. (D. 25-1) (D. 26-1) (D. 27-1) (D. 28, p. 19).

The parties proceeded to engage in discovery focused on settlement negotiations. Voltech produced payroll data and time-keeping records. (D. 29, ¶¶ 13, 24). It also took the stance that the named plaintiffs and the 14 opted-in plaintiffs ("the settlement members") were not entitled to payment for time spent traveling between worksites. (D. 29, ¶ 15). Conversely, counsel for the settlement members ("Plaintiffs' Counsel") maintained the settlement members were not paid for compensable overtime hours. (D. 29, ¶ 15).

Eventually, the parties reached a settlement in the gross amount of $500,000. The settlement agreement reflects benefits and detriments to both sides. In return for the $500,000 payment, the settlement members agree to dismiss this case with prejudice and execute releases. The settlement also includes a non-disparagement provision. The $500,000 gross settlement amount includes attorneys' fees for Plaintiffs' Counsel capped at 30% of

3

the settlement fund and four $3,000 incentive payments for each of the named plaintiffs. (D. 28, pp. 14-17). The defendants agree not to object to Plaintiffs' Counsel seeking attorneys' fees not to exceed 30% of the gross settlement amount and "incentives payments for the named plaintiffs not to exceed $3,000." (D. 28, pp. 14-17).

## II. DISCUSSION

"The FLSA allows employees to band together to enforce their rights by initiating or joining a collective action." *Clark v. Cap. Vision Servs., LLC*, Case No. 22-cv-10236-DJC, 2022 WL 2905356, at *2 (D. Mass. July 22, 2022) (citation omitted). Where, as here, the parties seek "to privately settle FLSA claims[,] . . . the approval of either the Department of Labor or the district court" is required. *Drexler v. TEL NEXX, Inc.*, Civil Action No. 13-cv-13009-ADB, 2019 WL 3947206, at *1 (D. Mass. Aug. 21, 2019) (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)) (additional citation omitted). "The Court may approve a proposed settlement upon a finding that all parties to the action have agreed to it, and that it represents a '*fair and reasonable* resolution of a *bona fide dispute* over FLSA provisions.'" *Id.* (citation omitted) (emphasis added).

In that vein, the named plaintiffs, individually and on behalf of the opted-in individuals, ask the court to approve the $500,000 settlement as a fair and reasonable resolution of a bona fide

4

dispute. They further request approval for Voltech to pay the $500,000 in two installments: the first on December 31, 2023, for $200,000; and the second on April 1, 2024, for $300,000. They also seek: (1) approval of incentive payments not to exceed $3,000 for each of the named plaintiffs; (2) approval of attorneys' fees for Plaintiffs' Counsel not to exceed 30% of the gross settlement amount; and (3) final certification of the settlement members under section 216(b). (D. 28, pp. 2, 16). The court addresses these requests seriatim.

A.  **Fair and Reasonable Settlement of Bona Fide Dispute**

  1.  **Bona Fide Dispute**

To constitute a bona fide dispute, "the matter resolved by the settlement under review must present contested factual issues, not purely legal issues concerning the FLSA's applicability." *Bradford v. Naples Causeway Dev., LLC*, Docket No. 2:21-cv-00015-NT, 2022 WL 3154760, at *2 (D. Me. Aug. 8, 2022) (citation omitted). Put differently, "[t]here must be 'some doubt that the plaintiffs would succeed on the merits through litigation of their FLSA claims.'" *Id.* (citation omitted).

Here, the parties factually dispute the number of FLSA compensable overtime hours worked by the settlement members. Voltech and Araujo ("defendants"), for their part, "vigorously maintain[] that [the settlement members] are not entitled to payment for time spent traveling between worksites." (D. 29, ¶

5

15).  Conversely, the settlement members maintain their entitlement to overtime compensation for hours they worked in excess of a forty-hour workweek.  These hours include time spent traveling from a worksite back to the Voltech office in company vehicles wearing company uniforms.  (D. 1, ¶¶ 13, 15, 17, 25, 26) (D. 19-1, ¶ 10) (D. 19-2, ¶ 10) (D. 19-3, ¶ 10) (D. 19-4, ¶ 7) (D. 19-5, ¶ 8) (D. 19-6, ¶ 9) (D. 19-7, ¶ 9).  As such, the settlement raises a bona fide factual dispute concerning FLSA provisions. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . ."); *see also Drexler*, 2019 WL 3947206, at *2 (finding bona fide dispute where employers misclassified plaintiff as exempt from overtime wages, which defendants denied).

### 2. **Fair and Reasonable Settlement**

In determining whether the settlement is fair and reasonable, the court examines "the 'totality of the circumstances,' which may include" the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260–261 (D. Mass. 2015) (citation omitted).

These second, third, and fourth factors favor approving the settlement as a fair and reasonable resolution. First, it is the product of arms-length bargaining by experienced counsel. The two lead attorneys for the settlement members have expertise in labor law. (D. 29, ¶¶ 4, 9). One of these attorneys has four decades of experience as a labor and employment attorney. (D. 29, ¶ 4). They used that expertise and experience to engage in detailed calculations of the possible overtime damages on a week-by-week basis for each settlement member. (D. 29, ¶ 13). Their calculations show that the $500,000 gross amount is more than 100% of the settlement members' alleged unliquidated damages if the settlement members prevailed at trial. (D. 29, ¶ 18). Thus, the bargaining and experience of Plaintiffs' Counsel obtained a significant monetary benefit and a fair settlement for the settlement members.

Similarly, the court takes judicial notice that the defendants' two attorneys are members of a firm that specializes in construction law, which is reflected on the firm's website. *See* https://www.skhanlaw.com; *Parlato v. Town of East Haven*, 3:22-CV-1094 (SVN), 2023 WL 5206873, at *8 n.4 (D. Conn. Aug. 14, 2023) (taking judicial notice of statements on law firm's website to show law firm's specialization in employment discrimination law).

7

One of these attorneys focuses on pre-litigation, dispute avoidance and strives to resolve disputes by agreement. *See Goodloe v. Royal Caribbean Cruises, Ltd.*, Case No. 18-21125, 2019 WL 1383655, at *4 n.3 (S.D. Fla. Feb. 15, 2019) (taking judicial notice of law firm's website to document attorney's experience and focus on admiralty law). Given this backdrop, the defendants' counsel bargained for and obtained the benefits of full and comprehensive releases by the settlement members and, upon payment of the $500,000 and the parties' execution of the settlement agreement, a dismissal of "the action . . . with prejudice and without cost to either party." (D. 28, pp. 14, 21-22). Indeed, the settlement agreement releases the defendants, their officers, and agents from all claims arising out of each settlement member's work for Voltech and its agents or officers. (D. 28, p. 14, ¶ 3). Accordingly, the settlement agreement is the product of arm's-length bargaining among experienced attorneys.

Second, the settlement avoids the risk that the settlement members might recover nothing or an amount lower than the amount awarded under settlement. (D. 29, ¶ 14). It also allows them to avoid the risk of an uncertain recovery. (D. 29, ¶ 11). Correspondingly, the settlement reduces the meaningful risk to the defendants of paying more than $500,000 in the form of damages, attorneys' fees, and additional costs.

Third, the settlement reduces the effort, work, and burden on the part of the settlement members to establish their claims. The defendants avoid the expense of additional counsel fees and litigation costs associated with going forward with discovery and a trial. There is also no reason to suspect fraud or collusion. *See Drexler*, 2019 WL 3947206, at *2. In all, these factors render the settlement fair and reasonable. As a final matter, bifurcating the $500,000 payment into two payments three months apart is reasonable.

## B. **Incentive Awards**

In assessing the reasonableness of incentive awards, the court may consider:

> (1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative effects that they have risked.

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *3 (D. Mass. June 8, 2017) (citations omitted). As indicated, the settlement envisions incentive awards for each of the four named plaintiffs in an amount not to exceed $3,000.

The first three factors favor the reasonableness and fairness of the incentive awards while the fourth factor is neutral. The named plaintiffs took actions which benefitted the settlement members by working and assisting Plaintiffs' Counsel to develop

9

liability theories and damages models.  (D. 29, ¶¶ 23-24).  They also assisted counsel in drafting the complaint.  (D. 29, ¶ 24). The amount of time expended on these tasks as well as the significant time spent "preparing and participating in the mediation leading to the settlement" easily warrants an incentive award of $3,000 for each of the named plaintiffs.  *See Lauture*, 2017 WL 6460244, at *3 (quoting *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015), as approving named plaintiff's $15,000 incentive award "for 'participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation'").

C. **Attorneys' Fees**

Where, as here, a "proposed FLSA settlement includes attorneys' fees," the court must "assess the reasonableness of those fees."  *Bradford*, 2022 WL 3154760, at *2.  The First Circuit endorses "two methods . . . for awarding fees in class actions." *Glynn v. Maine Oxy-Acetylene Supply Co.*, Docket No. 2:19-cv-00176-NT, 2022 WL 17617138, at *5 n.3 (D. Me. Dec. 13, 2022) (citation omitted).  The first is "the 'percentage-of-funds' method" and it corresponds to the capped 30% fee in the settlement.  *See id.* (citing *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305  (1st Cir. 1995)).  Under

10

this method, a plaintiff's attorney is "awarded a fee equal to a 'reasonable percentage of the fund recovered for those benefitted by the litigation.'" *Id.* (citing *In re Thirteen Appeals,* 56 F.3d at 305). Notably, "[a] one-third contingent fee is common in class action wage-and-hour cases." *O'Connor v. Dairy*, Docket No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (citations omitted). Similarly, "[w]ithin the First Circuit, courts generally award fees in the range of 20-30%, with 25% as the benchmark." *Arkansas Teacher Ret. Sys. v. Insulet Corp.*, 546 F. Supp. 3d 11, 16 (D. Mass. 2021) (citation omitted); *accord Glynn*, 2022 WL 17617138, at *5 n.3 (Class action fees "generally range from twenty to thirty percent of the total recovery." (quoting *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Pracs. Act Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *9 (D. Me. Feb. 10, 2016))).

As noted, the settlement anticipates a payment of attorneys' fees not to exceed 30% of the gross amount, i.e., $150,000.[2] (D. 28, p. 15, ¶ 5). This capped 30% fee therefore falls within the above-noted customary percentage range. Moreover, the parties negotiated the fee. When the parties negotiate an agreed amount of attorneys' fees in an FLSA settlement, "there is 'a greater range of reasonableness for approving attorney's fees.'"

---

[2] A $150,000 fee corresponds to a lodestar fee that Plaintiffs' Counsel calculated as $153,125. (D. 29, ¶ 29).

11

*Singleton*, 146 F. Supp. 3d at 261 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)); *see id.* (acknowledging continued need to "carefully scrutinize the settlement and the circumstances in which it was reached") (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Finally, an associate of the law firm Lichten & Liss-Riordan ("LLR") as well as an LLR partner, respectively, worked 50 hours and 245 hours on this case. An LLR paralegal worked 65 hours. (D. 29, ¶ 29). The total number of 420 hours of work lends support for a fee award in the range of $150,000. Per the foregoing, an attorneys' fee award not to exceed 30% of the $500,000 gross amount is reasonable.

D. **Final Certification Request**

When the parties request court approval of a settlement resolving an FLSA collective action, the court must determine if the proposed collective, i.e., the settlement members, "is appropriate for final certification for settlement purposes." *Anderson v. Team Prior, Inc.*, Docket No. 2:19-cv-00452-NT, 2022 WL 16531690, at *3 (D. Me. Oct. 28, 2022). Here, the named plaintiffs, on behalf of themselves and the opted-in plaintiffs, seek "final certification of" the named plaintiffs and the opted-in plaintiffs, which they refer to as the settlement collective. (D. 28, p. 2).

"Plaintiffs seeking certification of [an] FLSA collective action must demonstrate that employees are "similarly situated." *Id.* (citing section 216(b)). As of yet, "the First Circuit has not prescribed a specific procedure" for certification. *Id.* District courts in this circuit, however, typically use a two-step process for certification. *See id.; accord Clark v. Cap. Vision Servs., LLC*, Case No. 22-cv-10236-DJC, 2022 WL 2905356, at *2 (D. Mass. July 22, 2022) (outlining two-step approach of conditional certification followed by final certification) (citation omitted). Under the first step of conditional certification, "a fairly lenient standard" applies in which "[t]he plaintiff must show only . . . 'some factual support' . . . that the potential plaintiffs are similarly situated." *Clark*, 2022 WL 2905356, at *2 (citation omitted). The second step entails "the court mak[ing] a final 'similarly situated determination.'" *Id.* (citation omitted). The factual showing of similarly-situated employees at the second step presents a "'more stringent' standard" than the showing of similarly-situated employees at the first step. *Gonpo v. Sonam's Stonewalls & Art LLC*, Civil Action No. 16-40138-MGM, 2018 WL 1725695, at *4 (D. Mass. Apr. 9, 2018).

Because the named plaintiffs withdrew their motion seeking conditional certification (D. 23, ¶ 5), the court never granted conditional certification at the first step. Consequently, due to the procedural posture of this case and the parties' limitation of

13

the request to a final certification (D. 28, pp. 2, 11), the court proceeds to final certification at step two. *See Rodriguez v. Pyramid Operating Group, Inc.*, Civil Action No. 20-1207, 2023 WL 2562978, at *1 (E.D. Pa. Mar. 17, 2023) ("Due to this case's procedural posture, however, the Court never granted preliminary approval of the proposed collective action" and "[t]he Court therefore assesses whether the proposed collective action meets the requirements for final certification").

As indicated, the second step entails "a factual determination as to whether there are similarly-situated employees who have opted in." *Anderson*, 2022 WL 16531690, at *4 (citation omitted). More broadly, "[a]n action does not become a collective action 'unless other plaintiffs affirmatively opt into the class by giving written and filed consent, and the trial court certifies that such opt-in plaintiffs are in fact similarly situated.'" *Id.*; *see* 29 U.S.C. § 216(b).[3] Here, the settlement members provided written consent to join this action, and each of the 14 opted-in plaintiffs agreed to become a plaintiff and to be bound by any

---

[3] Pertinent to the above, section 216(b) states:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*. *No employee shall be a party plaintiff* to any such action *unless he gives his consent in writing to become such a party and such consent is filed in the court* in which such action is brought.

29 U.S.C. § 216(b).

14

judgment or settlement. Further, the named plaintiffs filed the written consent forms on the docket. The issue therefore reduces to whether the 14 opted-in plaintiffs are in fact similarly situated to the named plaintiffs. *See Anderson*, 2022 WL 16531690, at *4.

In general, employees are "similarly situated" when they "have similar (not identical) job duties and pay provisions, and are 'victims of a common policy or plan that violated the law.'" *Id.* at *3 (citation omitted). When the court makes a final similarly-situated determination at the second step, pertinent factors "include: (1) any disparate factual and employment settings—for example, whether plaintiffs were employed in the same corporate department, division, and location; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Clark*, 2022 WL 2905356, at *2 (citation omitted); *accord DaRosa v. Speedway LLC*, 557 F. Supp. 3d 315, 318 (D. Mass. 2021) (identifying same factors).

Affidavits and opt-in consent forms demonstrate that the named plaintiffs and the opted-in plaintiffs all worked as electricians at Voltech in Framingham during certain identified time-periods in the last three years. Further, these documents show that each named plaintiff and opted-in plaintiff were not paid overtime for the hours they worked beyond forty hours per

15

week and were classified as independent contractors.  (D. 4-1) (D. 7-1) (D. 19-1) (D. 19-2) (D. 19-3) (D. 19-4) (D. 19-5) (D. 19-6) (D. 19-7) (D. 25-1) (D. 26-1) (D. 27-1).  Using payroll data and time-keeping records received from Voltech, Plaintiffs' Counsel performed detailed calculations of the possible overtime damages on a week-by-week basis for each settlement member.[4]  (D. 29, ¶ 13).

As such, the named plaintiffs and the opted-in plaintiffs were employed in the same position (electricians), worked out of the same location (Framingham), advance similar claims (unpaid overtime compensation),[5] and have similar circumstances of employment (being classified as independent contractors).  These and other circumstances invariably lead to the conclusion that the opted-in plaintiffs are similarly situated to the named plaintiffs.

In sum, the court approves the settlement in the gross amount of $500,000 as a fair and reasonable resolution of a bona fide dispute.  Further, the court approves the incentive awards of $3,000 for each named plaintiff and attorneys' fees for Plaintiffs' Counsel not to exceed 30% of the gross amount.  The payment of the

---

[4] Whereas the second step ordinarily takes after discovery, *see Clark*, 2022 WL 2905356, at 2, the above affidavits and signed consent forms provide a proxy for more fulsome discovery.

[5] "The FLSA, in general terms, requires that an employee be paid a minimum hourly wage and overtime compensation if he or she works in excess of forty hours in a work week."  DaRosa v. Speedway LLC, 557 F. Supp. 3d 315, 318 (D. Mass. 2021).

16

$500,000 in two installments, one on December 31, 2023 for $200,000 and the other on April 1, 2024 for the remainder is also approved. As requested, final certification of the settlement collective is also approved.

As a final matter, Plaintiff's Counsel filed a consent to proceed before this court under 28 U.S.C. § 636(c) ("section 636(c)") on May 1, 2023. Relatedly, each opt-in consent form reflects that the opted-in plaintiff designated the law firm of Plaintiffs' Counsel to represent that individual for all purposes. After Plaintiffs' Counsel filed the section 636(c) consent, however, six additional settlement members signed consents to opt-in and become plaintiffs in this action. If Plaintiffs' Counsel wishes to have these six additional settlement members bound by any final approval by this court of an executed settlement agreement, then it is suggested that Plaintiffs' Counsel submit an additional section 636(c) consent for these six settlement members.

### III. **CONCLUSION**

In accordance with the foregoing discussion, the motion to approve the FLSA settlement agreement (D. 28) is **ALLOWED**. Prior to any final approval of the settlement by this court, it is suggested that Plaintiffs' Counsel consider filing an additional section 636(c) consent form, as explained in the previous paragraph.

/s/ Donald L. Cabell
DONALD L. CABELL, Ch.U.S.M.J.

DATED:  October 30, 2023